THOMAS P. SHELDON ET AL. V. THE CITY OF GRAND RAPIDS.

[See 61 Mich. 144.]

*Municipal corporations—Dedication of lands to public use—Adverse possession.*

In this case it is held that the use of the land in suit by the defendant for public purposes, for more than thirty years, under an original dedication to public use, is a bar to the present action.

Error to superior court of Grand Rapids. (Burlingame, J.)  Argued May 23, 1888.  Decided October 12, 1888.

Ejectment.  Plaintiffs bring error.  Affirmed.  The facts are stated in the opinion, and in 61 Mich. 144.

*Andrew T. McReynolds (More & Wilson,* of counsel), for appellants.

*James W. Ransom,* city attorney, for defendant.

SHERWOOD, C. J.   The plaintiffs bring ejectment against the city of Grand Rapids to recover possession of the undivided one-fourth part of the south half of what is known as " Court-house " or " Public " square.   They claim the title to the premises as heirs at law of Thomas C. Sheldon, deceased.   The declaration is the ordinary one in ejectment, and the defendant's plea is the general issue, with notice that the plaintiffs' suit is barred by the adverse possession of the defendant.   The cause was tried in the superior court at Grand Rapids, before the judge without a jury, who found, as a conclusion of law upon the facts shown by the testimony, that the right of possession of said premises was in the defendant at the time of the commencement of this suit, by dedication to the public, and by adverse possession held by the city for more than 15 years prior to the commencement of suit by the plaintiffs ; and thereupon caused judgment to be entered for the defendant accordingly.

The plaintiffs bring error.

The square in question is situated on the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 30, in town 7 N., range 11 W.   It is bounded on the south by East Fulton street ; on the east by East Park place ; on the north by Park street ; and on the west by West Park place,—the north half of the square being in what is known as the " Campau Plat," and the south half in Bostwick & Company's addition to the city of Grand Rapids.   In 1833 commissioners were appointed, under a territorial act, by the Governor of Michigan, to locate the seat of justice for Kent county, and the commissioners selected the square in question for that purpose, and made their report to the Governor of their doings, who filed the same in the office of the Secretary of State.   The report is dated November 3, 1833.

The land was entered by Samuel Dexter. The land, including the square in question, was deeded December 2, 1833, to Samuel Dexter. Dexter sold and conveyed, by deed dated April 25, 1835, to Louis Campau, a parcel of the land embracing the north half of the square. Campau platted this parcel, and upon the north half of the square designated it upon the plat as "Public Square." This plat was recorded on June 6, 1835.

On August 1, 1835, Dexter conveyed to Lyman I. Daniels and Thomas C. Sheldon a parcel of land, including the south half of the square; and in 1836 Sheldon conveyed to Thomas Tileston an undivided quarter of Daniels and Sheldon's purchase of Dexter.

On February 3, 1836, a plat was made by John Almy, and recorded in the office of the register of deeds. It was called a plat of the village of Kent. It outlines the Campau plat, and upon this plat the whole square is designated as "Court-house Square."

Daniels died August 6, 1837. The title to the south half of the square, so far as the record shows, was at this time in Daniels, Sheldon, and Tileston. About the year 1837 the lands owned by these proprietors were platted by E. B. Bostwick, and the plat was called and known as "Bostwick & Co.'s Addition to Grand Rapids." There can be no question, we apprehend, but that this map or plat was authorized by the proprietors of the land, as it has ever since been recognized in making disposition of lots, streets, and public grounds. This plat has marked upon it the land in question, and upon which is placed the words "Court-house Square."

In 1838 the county of Kent occupied the square with a court-house, which it erected thereon during the year, and which was occupied until the year 1844, for the purpose of holding courts and residence of the sheriff, when it was destroyed by fire. The building stood in the center

of the square, partly on the north and partly on the south half of the same. While the square was thus being occupied, and in December, 1842, Tileston obtained partition of the lands contained in the Bostwick & Co. plat (and which he held as a tenant in common with the heirs of said Lyman I. Daniels and the said Thoms C. Sheldon), in the circuit court for the county of Kent. The partition was made by commissioners, who made their report January 4, 1843. The following is a part of their report:

"And we do further certify and return that we, upon examination and inquiry, found that the above-described lands and premises had heretofore, by the said parties owning the same, been allotted and surveyed out into streets, lots, and blocks, as an addition to the village of Grand Rapids, and designated as 'Bostwick & Co.'s Addition to Grand Rapids,' a map of which we have hereto attached and made a part of this, our report, and by which we have caused this partition to be made."

The partition and report, together with the map, were recorded in the office of the register of deeds of the county of Kent, September 29, 1843.

In 1844 or 1845 the county built another court-house upon the old site, and held its court there until about the year 1850 or 1851.

Louis Campau, who owned and platted the north half of the square, had questioned the title, it would appear, to that part of the square, and on June 22, 1847, notified the board of supervisors of Kent county to vacate it, upon the ground that it was never dedicated for a court-house, but for a public park ; and when the court-house became unfit for use, in June, 1852, he purchased the same of the county, he having before then inclosed the north half by fence. At this time he was offering it to the city, and it purchased it of him for the sum of $500. The deed contains the following clauses in stating the purposes for which it was deeded :

" To be and remain public ground for the free and uninterrupted use of the inhabitants of the said city of Grand Rapids, as public ground, forever, and for no other purpose."

From this time forward the record shows the city has been the owner and in possession of the said north half, and, in connection with the other half, has controlled, improved, and ornamented it. At the time of the sale of the court-house to Campau it stood partly on one half and partly on the other of the square. Daniels, sometime in August, 1857, quitclaimed their interest in the premises in question to Evert B. Dyckman, and on February 25, 1880, Dyckman conveyed by quitclaim his interest therein to George E. Pantlind; the fee of one-quarter of the south half still remaining in the Sheldon heirs, the plaintiffs in this suit, subject to the interest in the defendant.

This Court decided in the case of *Supervisors v. City of Grand Rapids,* 61 Mich. 144 (27 N. W. Rep. 888), that, when the county recognized the removal of the county-seat from the square, and sold its court-house thereon to the owner of the fee, it lost its interest in both land and building; and further held that the possession of the city, as to the county, was adverse. When the county abandoned its interest, the city at once assumed control. What then has been the situation of the property since that time, as between these parties, is really the only question, as the record now presents the case, that needs to be inquired after. The judge of the superior court of Grand Rapids, in the decision of this case, finds that the city,—

"From 1850 down to the present time, has claimed and rented the premises in question as public grounds, devoted to public uses;"—

And that on October 18 of that year the citizens petitioned the common council of that year for an appropria-

tion to fence and ornament court-house square, and the city passed a resolution instructing the city surveyor to survey the public square, leaving on each side a space four rods wide for streets, and that he make a record of the same;—

"And it was further ordered that the petitioners have leave to proceed and inclose the same with a suitable fence."

That such survey was afterwards made, the streets laid out on the east, west, and north sides, and improved; that the fence was built between 1853 and 1855, under the auspices of the common co ¬cil, and painted, and it remained there until sometime in 1856, when a plan was adopted by the common council for the improvement of the public square, and the city then constructed walks through the same, and in October of that year authorized and instructed its marshal to take charge of the public square, and of any animals trespassing thereon; that at this time the city took possession under its deeds, and the dedication made by the owners to the public for its use, and appointed a committee of five to take charge of the improvements, and make such as it might deem advisable, and receive donations therefor from citizens, and a large amount of the improvements made were by donations from citizens.

That from that time to the present the city has been in possession, improving it for a public park or square; that, in consequence of the action of the common council, a new fence has been built around the park, with proper gates in the same at the points of entrance; they have planted it with shade trees; the grounds were enriched and properly prepared for the growth of the grass upon the lawn; walks and driveways have been constructed and graveled; a permanent and substantial speak-

er's stand has been built upon it, and a flag-staff erected; and all by the city, and with its public moneys; gas and water have also been put in and supplied to it by the city.

That such use by the city has been open, adverse, and hostile, and adverse to the claim of the plaintiffs, for a period of more than 30 years; and that the city is now well entitled to the square for the use now being made of it, both by dedication and possession.

We think the conclusion reached by the judge of the superior court fully sustained by the uncontradicted evidence in the case. The property was dedicated to public use beyond question by the original proprietors, Daniels, Sheldon, and Tileston; and it has constantly been in use for that purpose, against those now claiming the same, for more than 30 years.

This must be held a sufficient bar to their action, and the judgment below must be affirmed.

CAMPBELL and LONG, JJ., concurred.

MORSE, J. I concur in the result.

CHAMPLIN, J., did not sit.

